In the
United States Court of Appeals
For the Seventh Circuit

No. 02-1482

Lucini Italia Company,

Plaintiff-Appellant,

v.

Giuseppe Grappolini and Grappolini G.S.R.L.,

Defendants-Appellees.

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 01 C 6405--Charles R. Norgle, Sr., Judge.

Argued April 18, 2002--Decided May 7, 2002

   Before Flaum, Chief Judge, and Harlington
Wood, Jr. and Posner, Circuit Judges.

   Flaum, Chief Judge.  On January 31, 2002,
the district court denied as moot Lucini
Italia Company's ("Lucini's") motion for
preliminary injunction. Because we find
that an incorrect legal standard for
mootness was employed and that several
facts supporting the court's holding
appear unsupported by the record, we
vacate and remand for immediate discovery
and an expedited preliminary injunction
hearing.

   I.  Background/1

   Lucini, an Illinois corporation,
develops and markets gourmet food
products including high-end, extra-virgin
olive oil. In 1997, Lucini entered into a
consulting agreement with Giuseppe
Grappolini, an Italian citizen who was
known in the industry to be an olive oil
expert, and a supply agreement with his
company, Grappolini G.S.R.L./2
Grappolini's primary responsibilities
were to identify Italian producers of
olive oil, market, and promote Lucini's
products. In 1998, Lucini decided to add
to its product line olive oil flavored
with natural extracts--garlic or lemon,
for example. This flavor-added product is
known as "essential oil." Arthur Frigo,
Lucini's chairman, discussed the idea,

termed the "LEO Project," standing for Lucini Essential Oils, with Grappolini. They agreed orally that Lucini would be responsible for the business end of the project--advertising, marketing, distribution, and the like--and Grappolini would conduct studies involving the taste and smell of potential products, and find an Italian supplier of the necessary oils and extracts./3

For about two years, both Lucini and Grappolini appeared to be upholding their ends of the bargain, and the LEO project seemed to be approaching fruition. Lucini performed extensive research into the potential U.S. market for essential oil products, identified target markets and customers, and created a strategy determining, among other things, which flavors to market to which types of stores, which flavors to forgo altogether, advertising, packaging, and price points that would best allow the establishment of a market. Lucini, to its current dismay, disclosed this information to Giuseppe Grappolini after he signed two confidentiality agreements. Lucini guarded the results of its research, giving access only to high-level employees and to Grappolini.

Grappolini, on the culinary side of the project, located a company--Vegetal--to supply the necessary natural extracts./4 Lucini authorized Grappolini to negotiate and obtain for Lucini an exclusive supply arrangement with Vegetal, and drafted a supply contract for Grappolini to present to the company. Grappolini, Lucini asserts, agreed to do so. He reassured Frigo that the contract with Vegetal would be executed within 1 to 2 months, and Lucini planned to launch the LEO Project at a food show in San Francisco.

In late 1999, Lucini discovered that Grappolini himself entered into a supply agreement with Vegetal instead of executing one between Vegetal and Lucini. In December 2000, Lucini learned that Grappolini had brought to market his own essential oil product, termed "Res Essenziale." Res Essenziale, Lucini argues, is an imitation of the LEO product--it uses the flavors that Lucini found to be successful, and avoids those Lucini found would fail. Lucini also asserts that Grappolini relied on the

trade secret marketing and packaging information that Lucini disclosed, inconfidence, to Grappolini. Although Lucini learned of Res Essenziale from an Italian magazine article, it found the product for sale in a food store in Salt Lake City, Utah. Later, after this litigation had begun and Grappolini had contended that the few bottles in Utah were the only ones sold in the United States, Lucini discovered that a nation-wide specialty food store was selling Res Essenziale across the United States. Grappolini, at this point, provided the court with a declaration that he and his company had sold 1,200 bottles to this store. The parties have not performed any additional discovery because the district court has not required Grappolini to respond to Lucini's requests for information about the development of Res Essenziale or the quantities of essential oil sold in the United States.

In July 2001, Lucini filed suit against Grappolini, seeking a preliminary injunction and other relief based onGrappolini's misappropriation of Lucini's essential oil trade secrets. Grappolini filed, and lost, a motion to dismiss for lack of jurisdiction but did not respond to the motion. Several months later, the court denied Lucini's motion as moot, stating in a three-paragraph order that the parties had agreed to maintain the status quo and that they were engaging in ongoing efforts to settle the case. Later, the district court ruled that discovery should be stayed until March 26, 2002--the anticipated date of ruling from an Italian arbitration considering a breach of contract claim that Grappolini initiated against Lucini. That ruling has yet to occur.

II.  Discussion

We find that the district court's denial as moot of Lucini's motion for preliminary injunction was in error. The correct standard for mootness--that no reasonable expectation exists that the alleged wrong will be repeated--was notapplied. Wilk v. American Medical Ass'n, 895 F.2d 352, 367 (7th Cir. 1990); see also Friends of the Earth, Inc. v. Laidlaw Envtl. Services, 528 U.S. 167, 189 (2000) (citing United States v.

Concentrated Phosphate Exp. Ass'n, 393 U.S. 199 (1968)). The burden of persuasion that such conduct cannot reasonably be expected to reoccur lies with the defendant. E.g., Wilk, 895 F.2d at 367.

In reaching its decision, the court did not point to any evidence showing that no reasonable expectation existed that, before a ruling on the merits of the case, Grappolini would sell essential oil products in the United States or continue to use Lucini's marketing strategy in developing his own product. Instead, it states in its order that because the parties have maintained the status quo thus far in the litigation and have attempted to settle the case, the request is moot.

A request for an injunction, preliminary or otherwise, simply is not mooted because the parties have, for the course of the litigation and by their own agreement, maintained the status quo. See Friends of the Earth, 528 U.S. at 189 ("It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.") (internal citations omitted). The district court cited two facts to support its finding of mootness: Grappolini's agreement to maintain the status quo, and the parties' efforts to settle the case. However, even accepting these assertions as true, they fail to demonstrate that no reasonable chance exists that Grappolini will sell flavored oils or that he will apply the trade secret information misappropriated from Lucini. Indeed, Grappolini does not argue that these facts establish mootness. Rather, he contends that the district court denied the injunction on the merits. We disagree. Because the court stated specifically that "plaintiff's motion for preliminary injunction is moot," we will take it at its word. Nothing in the order applies the facts of the case to the substantive elements that a party must show when requesting a preliminary injunction: 1) a reasonable likelihood of success on the merits of the underlying claim; 2) no adequate remedy at law; and 3) irreparable harm if the injunction is not granted. Ty, Inc. v. Jones Group, Inc., 237 F.3d 891 (7th Cir. 2001). After a court has considered

these three issues, it must weigh the potential harms (although such balancing may be inapplicable if Grappolini's violation of Lucini's rights was willful) and consider the public interest. PepsiCo., Inc. v. Redmond, 54 F.3d 1262 (7th Cir. 1995). Although the court used the phrase "irreparable harm" during a hearing several weeks after denying the motion for preliminary injunction, such language does not modify or appear in the order at issue. The district court never applied the facts of this case to the substantive standard a party must meet to show the need for a preliminary injunction./5

Moreover, we find the court's statements of fact to be erroneous. The parties have not agreed to maintain the status quo; in fact, they have agreed on little throughout this litigation. While Grappolini declared in an affidavit that he had sold only 1,200 bottles of Res Essenziale in the United States, the court has not allowed sufficient discovery for Lucini to determine the veracity of this statement. Particularly because Grappolini has shown his declarations to be unreliable, the evidentiary value of this statement is extremely limited. He never agreed to forgo selling any product in the future, and Lucini never agreed that his sales were limited to the 1,200 bottles. In fact, Lucini has consistently contended that Grappolini continues to sell essential oil products in the United States. Furthermore, the sale of Res Essenziale is not the only action that Lucini seeks to enjoin; because it argues that Grappolini used its trade secret marketing and business plan to develop his oil, it seeks to enjoin any action whereby Grappolini could continue to do so. Grappolini has not agreed to stop using or disclosing the trade secret essential oil design and marketing information that Lucini developed and contends that he has been using in developing his Res Essenziale. Neither have the parties attempted to settle the case; the ongoing arbitration in Italy deals with a separate issue--whether Lucini breached its contract with Grappolini. Lucini attempted to bring the instant claims in that arbitration, but was told it could not do so; the fact that both actions are ongoing does not indicate any willingness to settle either

one.

The facts, as stated by the court below, do not show that the request for an injunction is moot. Beyond that, they are unsupported and therefore should not be relied upon in the district court's decision of the motion on the merits.

The facts that should be relied upon--those related to Grappolini's sales, marketing, and developing of essential oil products--are sparse. The contention that Lucini has not established irreparable injury and therefore cannot obtain the injunction it seeks appears highly speculative given that the district court has stayed discovery and Grappolini, therefore, has yet to respond to Lucini's requests for information regarding the scope of the essential oil agreement and of his actions. The extent of the irreparable harm, therefore, is impossible to assess at this point. The court's statement in its February 19 order (issued 2 weeks after denying the injunction) that the facts may argue against a preliminary injunction because "if these sales [of Res Essenziale] are known and ascertainable, the irreparability argument seems to fail" is untelling. The fact remains that the extent of the sales and other trade secret usage is not known.

The district court, in the above-mentioned order, granted Grappolini's request to stay discovery pending a ruling from the Italian arbitration which was set for March 26, 2002. Neither that ruling nor the discovery Lucini seeks has yet to occur. More information is necessary to move forward with the preliminary injunction hearing; without it, the court is unable to fully assess the request on the merits.

III.  Conclusion

For the reasons stated above, we VACATE the finding of mootness by the district court and REMAND for immediate discovery and an expedited hearing on the merits of the motion for preliminary injunction.

FOOTNOTES

/1 Several key facts in this case are in dispute. Because Grappolini has not yet responded to Lucini's discovery requests and has failed to

include a factual background section of his brief on appeal, we will set out the facts as Lucini presents them to us, noting, when necessary, Grappolini's version as presented in affidavits to the district court.

/2 In this opinion, Giuseppe Grappolini and Grappolini G.S.R.L will be referred to collectively as "Grappolini."

/3 Grappolini disputes facts surrounding the LEO agreement. He did admit to the district court that some form of oral agreement existed regarding the LEO product line.

/4 Grappolini asserts that he had formed a relationship with Vegetal and had researched the development of essential oils before his relationship with Lucini began.

/5 In fact, the court could not have done so at the time of its order given that so little discovery had occurred.